NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-4244 & 13-4729
_____

In re: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine)
Products Liability Litigation

Thomas S. Yeary,
                Appellant No. 13-4244

Melanie L. Groce,
                Appellant No. 13-4729
_____

On Appeal from United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. 2-99-cv-20593, 2-11-md-01203 & 2-16-md-01203)
District Judge: Honorable Harvey Bartle, III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 10, 2014

Before:  FISHER, COWEN and TASHIMA,* *Circuit Judges*.

(Filed: August 4, 2014)
_____

OPINION
_____

TASHIMA, *Circuit Judge*.

_____

        *The Honorable A. Wallace Tashima, Senior Circuit Judge for the Ninth Circuit
Court of Appeals, sitting by designation.

Tom Yeary and Melanie Groce (together, "Appellants") appeal decisions[1] of the United States District Court for the Eastern District of Pennsylvania denying them recovery under the terms of the Diet Drug Nationwide Class Action Settlement Agreement (the "Settlement Agreement"). We will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.[2]

This case is part of an ongoing multi-district litigation concerning diet drugs called "Pondimin" and "Redux," previously sold by Wyeth.[3] Under the Settlement Agreement, Wyeth was required to contribute funds to a trust for the payment of claims. The resulting Settlement Trust (the "Trust") is responsible for administering and reviewing class members' claims to determine eligibility for benefits.

To qualify for benefits, claimants must submit a "Green Form" disclosing their personal and medical information. Part II of the Green Form requires a board-certified

---

[1] The District Court denied Yeary's claims in Pretrial Order ("PTO") 9149 and Groce's claims in PTO 9166. Their claims were briefed separately on appeal, but will be resolved together.

[2] We have previously described the diet drugs litigation in detail. *See, e.g.*, *In re Diet Drugs*, 582 F.3d 524, 529-32 (3d Cir. 2009); *In re Briscoe*, 448 F.3d 201, 206-08 (3d Cir. 2006); *In re Diet Drugs*, 401 F.3d 143, 147-48 (3d Cir. 2005); *In re Diet Drugs*, 385 F.3d 386, 389-92 (3d Cir. 2004); *In re Diet Drugs*, 282 F.3d 220, 225-29 (3d Cir. 2002).

[3] Prior to March 11, 2002, Wyeth was known as American Home Products Corporation.

cardiologist or board-certified cardiothoracic surgeon ("attesting physicians") to attest to the claimant's level of valvular heart disease, based on a reading of an echocardiogram videotape. Claimants qualify for benefits if they suffer from, among other things, moderate or more severe mitral regurgitation. Benefits are calculated based on several factors, including age, duration of diet drug use, and severity of disease.

The Settlement Agreement directs the Trust to audit 15% of submitted claims. When a claim is selected for audit, the Trust forwards the claimant's medical history and echocardiogram to an independent board-certified cardiologist (an "auditing physician"). The auditing physician reviews the medical file and determines whether a reasonable medical basis supports the findings of the claimant's attesting physician. As part of the audit, the Trust also reviews the claimant's Green Form for any intentional material misrepresentations of fact.

Appellants submitted completed Green Forms in the fall of 2002. Their attesting physicians[4] submitted findings that Appellants suffered from moderate mitral regurgitation, abnormal left atrial dimension, and reduced ejection fraction in the range of 50% to 60%. Based on such findings, Appellants would be entitled to Matrix A-1, Level II benefits – approximately $500,000 each.

Unexpectedly, the Trust was inundated with claims – by November 2002, the Trust was expected to receive more than 75,000 claims, more than twice the number of

---

[4] Dr. Dominic Pedulla was Yeary's attesting physician, and Dr. Howard Brazil was Groce's attesting physician.

3

claims anticipated at the time of settlement. *See* PTO No. 2662 at 8. The District Court determined that many of these submissions were unreliable due to mass screening programs implemented by various law firms in which aardiologists made broad-sweeping and unreasonable judgments concerning the evidence of valid claims. *See In re Diet Drugs*, 543 F.3d 179, 182 n.4 (3d Cir. 2008). To address this problem, the District Court modified the Settlement Agreement's 15% auditing cap to allow for the audit of every claim. PTO No. 2662.

In early 2004, the Trust audited Appellants' claims. The auditing physicians[5] determined that the findings of Appellants' attesting physicians were supported by a reasonable medical basis. Based on the audits, the Trust issued Post-Audit Determination Letters awarding benefits. The letters informed Appellants that "the Trust may seek additional information . . . or call for additional steps with regard to your claim, even if these procedures or information . . . are not anticipated at this time." Trust Supp. App. (Yeary) 70sa; Trust Supp. App. (Groce) 40sa.

Before the Trust paid Appellants benefits, however, the District Court stayed the processing of claims pending implementation of the Seventh Amendment to the Settlement Agreement.[6] At the time of the stay, there were 968 claims that had passed

---

[5] Dr. David Lieb audited Yeary's application, and Dr. Steven Fein audited Groce's application.

[6] The Seventh Amendment was adopted in an attempt to hasten the 100% auditing procedure ordered by the court. *See In re Diet Drugs*, 226 F.R.D. 498 (E.D. Pa. 2005).

audit but remained unpaid, known as Pre-stay Payable Post-Audit Determination Letter ("PADL") claims. The Trust alleged that 580 PADL claims, including Appellants', contained intentional material misrepresentations of fact that were not detected during the initial audit.

The District Court ordered the Trust to re-review the 5(a) claims[7] and provide claimants with "a report stating with the specificity required by Fed. R. Civ. P. 9(b) and Audit Rule 23(c) the specific factual basis for the Trust's assertion that there was a material misrepresentation." PTO No. 3883 at 5. The District Court determined that review of 5(a) claims should proceed as follows:

> To ensure that all issues relating to these claims are reviewed on a claim-by-claim basis, the Trust shall promptly review the entire claim file for each pre-stay payable PADL claim and issue new Post-Audit Determinations. Claimants may contest such determinations and, after considering any contested materials, the Trust shall issue Final Post-Audit Determinations. If any claimant challenges a Final Audit Determination, his or her claim shall then proceed through the show cause process as established in PTO No. 2807.

PTO No. 5625 at 7.

The Trust issued new initial Post-Audit Determination Letters denying Appellants' claims based on substantial evidence of intentional material misrepresentation. The letters included findings from another auditing cardiologist, Dr. Joseph Kisslo, who, in

---

[7] These are the 580 PADL claims referred to above. They are sometimes called "5(a) claims," based on paragraph 5 of PTO No. 3883, which directs the Trust to categorize all PADL claims in one of three categories, including "(a) Pre-Stay Payable PADL claims where the Trust alleges that there was intentional misrepresentation . . . in connection with the claim ('Paragraph 5(a) Claims')." PTO No. 3883 at 3.

5

addition to agreeing with the Trust's ultimate determinations of intentional misrepresentation, concluded that there was no reasonable medical basis for finding moderate mitral regurgitation based on Appellants' echocardiograms.

Appellants contested the Trust's determinations, but the Trust reaffirmed its decision in its Final Post-Audit Determinations. Appellants, disputing the Trust's Final Post-Audit Determinations, then requested that their claims proceed through the show cause process. The Trust applied to the District Court to require Appellants to show cause why their claims should be paid, and the District Court issued the show-cause orders. The District Court referred Appellants' claims to a Technical Advisor, Dr. Gary Vigilante, to prepare a Technical Advisor Report. In his report, Dr. Vigilante agreed with Dr. Kisslo that there was no reasonable medical basis for Appellants' attesting physicians' findings of moderate mitral regurgitation. He also agreed that the echocardiogram "was not conducted in a manner consistent with medical standards." Trust. Supp. App. (Yeary) 239sa; Trust Supp. App. (Groce) 168sa.

After examining the record, including Dr. Vigilante's report, the District Court held that Appellants failed to meet their burden of proving that a reasonable medical basis existed to support their claims. The District Court did not address whether Appellants' claims contained intentional material misrepresentations of fact. Appellants now appeal to this Court.

6

## II.

The District Court had jurisdiction over all terms of the Settlement Agreement under 28 U.S.C. §§ 1332 and 1407. We exercise jurisdiction over a final order of the District Court under 28 U.S.C. § 1291.

"We review a District Court's exercise of its equitable authority to administer and implement a class action settlement for abuse of discretion." *In re Diet Drugs*, 543 F.3d at 184 n.10. An abuse of discretion exists if the District Court's decision "rest[s] on a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* (quoting *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006)) (internal quotation marks omitted).

## III.

Appellants raise two primary issues on appeal. First, Appellants argue that the District Court clearly erred in holding that Appellants' claims were not supported by a reasonable medical basis. Second, Appellants argue that the Trust's second review of their claims violated the Settlement Agreement, their right to due process, and the District Court's PTOs. We disagree with both of these contentions.

## A.

"Once the Trust denies a claim and the claim advances to a show cause proceeding, the claimant has the burden of proving there was a reasonable medical basis

7

for the attesting physician's representations." *Id.* at 189. Appellants contend they met this burden because their claims were supported by the findings of their attesting physicians, as well as the Trust's own auditing cardiologists. The District Court denied Appellants' claims on the ground that Appellants failed to rebut the findings of Dr. Kisslo and Dr. Vigilante, who each determined that Appellants' attesting physicians improperly measured regurgitation and failed to conduct the echocardiogram in a manner consistent with medical standards.

We hold that the District Court's findings are not clearly erroneous. "The test is not what this court would have done under the same circumstances; that is not enough. The court must feel that only one order could have been entered on the facts." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (quoting *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977)) (internal quotation marks omitted). Without rebutting Dr. Kisslo's and Dr. Vigilante's findings, Appellants cannot demonstrate that the *only* conclusion that may be drawn from their echocardiograms is that of moderate mitral regurgitation. Because the record supports a finding that there is no reasonable medical basis for Appellants' attesting physicians' Green Form findings, we cannot conclude that the District Court abused its discretion in holding that Appellants failed to meet their burden of proving that there was a reasonable medical basis for their attesting physicians' Green Form findings.

8

B.

Appellants' three arguments challenging the Trust's second review of claims are unavailing. First, the Settlement Agreement permitted the District Court to order the re-audit of Appellants' claims and to rule against Appellants in show cause proceedings on reasonable-medical-basis grounds. The Agreement expressly authorized the District Court to "order the Trustees and/or Claims Administrator(s) to perform such additional audits and/or adopt such additional claims administration procedures as the Court deems appropriate."[8] Settlement Agreement VI.E.8. It also clearly authorized the District Court to deny Appellants' claims during the show cause process "[i]f the Court determines that there was no reasonable medical basis to support a material representation made by a physician in support of a Claim." *Id.* Thus, the District Court did not violate the Settlement Agreement by ordering the second audit of Appellants' claims or by denying the claims on grounds that they were not supported by a reasonable medical basis.

Second, no due process violation occurred because Appellants had notice of the District Court's procedures and ample opportunity to be heard. *Mullane v. Cent. Hanover*

---

[8] Appellants cite in their supplemental letters *In re Deepwater Horizon*, 753 F.3d 509 (5th Cir. 2014), in support of their argument that authorizing the second audit exceeded the District Court's authority. That case is inapplicable here because, in that case, the Fifth Circuit determined that the claims administrator exceeded its authority by requiring claims to meet a condition for approval that the settlement agreement expressly did not require. *See id.* at 512. By contrast, the Settlement Agreement here expressly authorized the District Court to order additional audits.

9

*Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In fact, both Appellants were heard during their respective show cause proceedings, albeit without oral argument.

Third, we reject Appellants' arguments that the Trust violated PTO Nos. 3883 and 5625. The Trust did not violate PTO No. 3883 because it timely furnished Appellants with individual reports that specified the factual basis for the Trust's findings of material misrepresentation. Neither did the Trust violate PTO No. 5625 because the Trust did not, contrary to Appellants' argument, exceed the scope of review authorized by the order.

Accordingly, we reject Appellants' arguments challenging the second review of their claims.

## IV.

For the foregoing reasons, we will affirm the District Court's orders denying Appellants' claims for benefits.